E-FILED
Tuesday, 31 March, 2026  01:09:33 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL R. LIBBRA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-3298 |
| | ) | |
| EXPERIAN INFORMATION SERVICES, | ) | |
| INC., | ) | |
| Defendant. | ) | |

### OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

This case is about whether a consumer reporting agency ("CRA") violated federal law by not following reasonable procedures to assure the maximum possible accuracy of its reporting and by failing to reinvestigate the information after it was disputed.

## I.    PROCEDURAL BACKGROUND

Plaintiff Michael Libbra filed his complaint against Experian Information Services, Inc., alleging it violated 15 U.S.C. § 1681e(b) and 15 U.S.C. §1681i. On July 22, 2024, the Court denied the motion to dismiss filed by Experian and other former defendants. Libbra moves for partial summary judgment asking the Court to find 1) Experian's credit report was inaccurate; 2) Experian negligently and willfully violated 15 U.S.C. § 1681i; and 3) he sustained damages due to Experian's conduct, with the exact amount to be determined by a jury. (Doc. 92). Experian asks the Court to enter summary judgment in its favor on both Counts. (Doc. 89). Libbra also filed a motion to preclude certain evidence Experian attached as an exhibit to its motion. (Doc. 98).

## II.    FACTUAL BACKGROUND

Libbra maintained car insurance through GEICO and typically paid his monthly premium through autopay. (Doc. 92 at ¶ 1–2). On September 14, 2022, GEICO states it tried to debit Libbra's automatic payment, but his bank declined the transaction. (Doc. 89-6 at ¶ 10; Doc. 91-2 at 7:11–18). However, Libbra's bank records indicate money was removed from his account on September 14th (Doc. 92-3 at 7), and a bank representative testified the money went to GEICO. (Doc. 92-5 at 122:3–6). GEICO maintains it never received that payment.

The following day, on September 15, 2022, after GEICO informed Libbra they did not receive his monthly premium, he made the premium payment manually which GEICO received. (Doc. 89 at ¶ 33; Doc. 92 at ¶ 5). Libbra later disputed the double-charge with his bank and was refunded the September 15 manual payment. (Doc. 92 at ¶¶ 7, 13, 17).

GEICO sent Libbra multiple emails over the course of several weeks telling him he still owed $230. (Doc. 89 at ¶ 39; Doc. 92 at ¶ 15). Libbra refused to pay because he had already done so. Eventually, GEICO cancelled Libbra's insurance and sent the disputed debt to former defendant, Credit Control Services, Inc. ("CCS"). (Doc. 92 at ¶¶ 16, 18). CCS subsequently sent Libbra several collection letters and, in May of 2023, began reporting the collection account to Experian who placed it on Libbra's credit file. (Doc. 89 at ¶¶ 42, 44).

In August 2023, Experian received a dispute letter electronically signed by Libbra. (*Id.* at ¶ 49; Doc. 89-7). The letter included Libbra's name, date of birth, address, a photo of his driver's license, and social security number. (Doc. 89-7). While the letter was written in the first-person and included bank documents supporting the claim, Libbra did not personally write the letter (*Id.*; Doc. 89 at ¶ 50). A third-party, Consumer Attorneys, drafted the letter after receiving substantive content and supporting documents from Libbra. (Doc. 97 at ¶ 1). Libbra testified he reviewed the letter, signed it, and authorized its mailing. The letter was sent from a Florida zip code by a third-party mail service that Experian alleges sends it thousands of identically enveloped dispute letters each year. (Doc. 89 at ¶¶ 49, 53, 57).

Experian screened Libbra's letter under its "suspicious mail" procedures to identify dispute letters it believes were not sent "directly" from a consumer. (Doc. 92 at ¶ 22). *See* 15 U.S.C. § 1681i(a). Under those procedures, Experian mail sorters put mail they believe came from the same source into "batches" based on similar packaging and labeling. (*Id.* at ¶ 24). The sorters then open and review five pieces of mail from a batch to "verify" its contents.[1] (*Id.* at ¶ 27; Doc. 92-9 at 130:15–18). If the sorters believe the five pieces did not come "directly" from consumers, the entire batch is marked as "unverified", and their senders are sent a "PA 825 Letter" informing them of Experian's determination. (Doc. 92 at ¶ 27; Doc. 89 at ¶¶ 20–21, 25). Sorters look for the consumer's

---

[1] Experian has different procedures for larger mail, but Libbra's dispute letter was only a few pages.

signature and assess similarities in wording and formatting between letters in making this determination. (Doc. 92 at ¶ 29; Doc. 92-9 at 131:14–16).

Experian sent Libbra a PA 825 Letter stating: "We received a recent request regarding your credit information that does not appear to have been sent directly by you or to be authorized by you. As a precautionary measure, we have not taken any action on your alleged request." (Doc. 92 at ¶ 49; Doc. 89-3). The letter explained how Libbra could directly dispute information on his credit report. (Doc. 89-3). Libbra did not respond to the letter and Experian did not reinvestigate. (Doc. 101 at ¶ 41). Experian later deleted the collection account from Libbra's file at CCS's instruction. (Doc. 89 at ¶ 72).

## III.  DISCUSSION

### A.  Legal Standard

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A factual dispute is only material if its resolution might change the suit's outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008). Summary judgment is not appropriate if a reasonable jury could return a verdict for the nonmoving party.

*Anderson*, 477 U.S. at 248. "At summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006) (internal quotation marks omitted).

## B. Analysis

### (1) The Accuracy of Experian's Credit Report

To succeed on either of his claims under Sections 1681e(b) or 1681i(a) of the FCRA, Libbra must show that Experian's credit report contains "inaccurate information." *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020) (internal quotation marks omitted); *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 811 (7th Cir. 2023). Specifically, Libbra must show he did not owe GEICO $230 and, therefore, the corresponding collection account noted in his credit file was inaccurate.

Libbra contends he paid GEICO by autopay on September 14, 2022, and then manually on September 15, 2022. He was later refunded for the September 15 charge after he disputed it. Libbra's bank statements and testimony from his bank representative both indicate that the September 14 auto payment went through successfully. (Doc. 92-3 at 7; Doc. 92-5 at 122:3–6). In rebuttal, Experian states GEICO never received payment from Libbra on September 14 and is still owed the debt.

A reasonable jury reviewing the record could find either that the $230 debt was satisfied or that it was not. *See Anderson*, 477 U.S. at 248. Therefore, the Court finds there is a genuine dispute of material fact as to whether Experian's credit report on Libbra was

inaccurate. As such, Libbra's Motion for Partial Summary Judgment is DENIED in whole because all three requests are contingent on the inaccuracy of Experian's credit report.[2]

Experian contends that even if GEICO received payment, Libbra cannot show Experian's credit file was inaccurate because Libbra undisputedly had a CCS collections account and Experian merely reported the existence of it.[3] But Experian too narrowly construes what accuracy means under the FCRA. While CRAs do not have "a duty to determine the *legality* of a disputed debt," a *factually* incorrect report is "inaccurate" under the FCRA. *Denan*, 959 F.3d at 294–95 (emphasis added). Factual inaccuracies "include the amount a consumer owes." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 568 (7th Cir. 2021). The proper question is whether Libbra factually owed the money the collection account said he did — "the alleged inaccuracy turns on . . . simply *examining* the facts alone." *Id.* at 568–69. If Experian's report included a collection account for money Libbra verifiably paid, the report would be inaccurate. Because Libbra contests the factual accuracy of Experian's credit report — that he paid GEICO and the collection account says otherwise — the Court rejects Experian's argument on this point.[4]

---

[2] Libbra argues various parts of the record are comprised of inadmissible hearsay. The Court's legal conclusions here, and throughout the order are not contingent on this contested evidence. As such, the Court does not make any admissibility determinations.

[3] In a previous order, the Court dismissed a similar argument from Equifax Information Services, LLC. (Doc. 46 at 7–10).

[4] In a supplemental filing, Experian provides a California district court case where a bank admittedly failed to process an automatic payment and the unpaid amount was noted on a credit report. *Bohan v. Citibank, N.A., et al.*, No. 3:25-cv-01571 (S.D. Cal. Dec. 30, 2025). The California court found that whether the late payment was the bank's fault was a legal question requiring interpretation of an autopay agreement the bank had with the plaintiff. *Id.* at 5. As such, the defendant CRA was not obligated to address the legality of the disputed debt. *Chuluunbat*, 4 F.4th at 568–69. But that decision and other cases cited by Experian concerning legal disputes over automatic payments are inapposite because Libbra is not casting legal blame on his bank — he contends his bank faithfully processed his payment and GEICO received it.

### (2) Experian's Reliance on CCS

A CRA "is not automatically liable even if the consumer proves that it prepared an inaccurate credit report because the FCRA does not make reporting agencies strictly liable for all inaccuracies." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (internal quotation marks omitted). Even in cases where a CRA reports an inaccuracy, it is still not liable if it followed "reasonable procedures to assure maximum possible accuracy" of its credit reports. *Id.* (quoting 15 U.S.C. § 1681e(b)). "The reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (citation omitted).

Here, Experian's initial reliance on CCS's information was reasonable as a matter of law. Libbra argues it was unreasonable because Experian simply accepted CCS's word at face value that Libbra had an unpaid debt. The Seventh Circuit has explained that CRAs are free to rely on documentation from facially reliable furnishers—and need not independently verify underlying facts—prior to receiving notice of purported inaccuracies. *Chaitoff*, 79 F.4th at 816–17; *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) (citing *Henson*, 29 F.3d at 286); *Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 592 (7th Cir. 2019) ("[The CRA] had no reason to believe that [the furnisher] was an unreliable source, so its potential liability began only after [Plaintiff] first disputed the information in her credit report.").

Experian "had no reason to believe" CCS, a large collection firm providing nationwide coverage, is an unreliable furnisher. *Cf. Walton*, F. App'x at 592. Over ninety-nine percent of the tradelines[5] CCS reports comply with industry coding standards, putting CCS's "fatal error" rate below average for the collection industry. (*Id.* at ¶¶ 14, 27). Libbra provides no data suggesting CCS has a history of unreliability that could have potentially put Experian on notice. Instead, Libbra argues Experian has not provided enough documentation to show its procedures are reasonable and the evidence it has provided should be disregarded. However, the record is sufficient to rule in Experian's favor on this issue as a matter of law, even if the Court were to exclude the evidence Libbra argues is inadmissible. Therefore, Experian reasonably relied on CCS as a furnisher in reporting Libbra's credit file and, accordingly, its procedures in that respect did not violate 15 U.S.C. § 1681e(b).

### (3) Experian's "Suspicious Mail" Procedures

Whether Experian's "suspicious mail" procedures are "reasonable procedures to assure maximum possible accuracy" of its credit reports presents a genuine dispute of material fact. 15 U.S.C. § 1681e(b). Under these procedures, Experian screened Libbra's dispute letter and, finding it "suspicious," did not conduct a reinvestigation. A jury could find that Experian's process of setting aside "suspicious" mail is unreasonable as it may preclude Experian from reinvestigating legitimate disputes and remedying inaccurate

---

[5] Tradelines are credit accounts listed on credit reports. If a credit account is sold to a collection agency, it shows up as a separate tradeline on a credit report.

information. There is also a genuine factual dispute as to whether Experian consistently follows these procedures.

The Court rejects Experian's argument that any reinvestigation would have been futile because it presumes that its reporting is accurate[6] and, as such, its reinvestigation would have not found Libbra's bank records persuasive. Recall that "[t]he reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Sarver*, 390 F.3d at 971. Here, the reasonableness of Experian's "suspicious mail" procedures is not "beyond question." Therefore, Experian's request for summary judgment as to Count I is denied as to the reasonableness of the "suspicious mail" procedures.

### (4) Experian's Obligation to Reinvestigate

A CRA must conduct a "reasonable reinvestigation" into the accuracy of disputed information in a consumer's credit file if the consumer "notifies the [credit reporting] agency *directly*, or indirectly through a reseller, of such dispute." 15 U.S.C. § 1681i(a)(A) (emphasis added); *see also Henson*, 29 F.3d at 286 ("A [CRA] that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice."). Experian contends it had no obligation to conduct a reinvestigation because Libbra's dispute letter did not come "directly" from him. For this analysis, the Court will assume Experian's credit report was inaccurate. *See Johnson v. Trans Union, LLC*, 524 F. App'x 268, 270–71 (7th Cir. 2013) (collecting cases)

---

[6] *E.g.* Doc. 101 at 5 ("Experian asking Plaintiff to verify that he had authorized a dispute had zero impact on the outcome. CCS would have confirmed its reporting was accurate—because it was.").

(plaintiff cannot prove a violation of the FCRA's reinvestigation requirement without showing a defendant provided inaccurate information).

The Federal Trade Commission has stated CRAs "need not investigate a dispute about a consumer's file raised by a third party . . . because the obligation under this section arises only where file information is disputed 'by the consumer' who notifies the agency 'directly' of such dispute." Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act*, 2011 WL 3020575, at *70 (2011). However, few courts within the Seventh Circuit have substantively considered whether a notification came "directly" from a consumer. Both parties rely on out-of-circuit cases. *See, e.g., Trinity Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917, 921 (9th Cir. 2019) (consumer who had "absolutely no input" into a dispute letter sent by a third party did not "directly" notify the CRA); *Stecklein v. Experian Info. Sols., Inc.*, 113 F.4th 858, 862 (8th Cir. 2024) ("Nothing . . . says that [a dispute letter] must go directly from a consumer's mailbox to the credit agency's post office box or business address.").

Turning to a case within this Circuit, in *Koerner v. Experian Information Solutions, Inc.*, a consumer-plaintiff provided contested testimony that he had written several dispute letters with the assistance of a third-party and, in the case of one letter, his attorneys. No. 20-CV-0522, 2023 WL 2631571, at *5–7 (N.D. Ill. Mar. 24, 2023). The Court rejected Experian's argument that the letter had not come "directly" from the consumer, finding there was "evidence before the Court that [the consumer] was involved in submission of the dispute letters to Experian." *Id.* at *4–5.

Here, Libbra testified he supplied the substantive information for the dispute letter, provided the documents attached to the letter, reviewed the letter, electronically signed it, and asked Consumer Attorneys (the third party) to mail it for him. (Doc. 97 at ¶ 1). Although not written by Libbra, the letter was drafted from his perspective and with his substantial assistance. Drawing all reasonable inferences in Libbra's favor, the Court cannot find as a matter of law that Libbra did not "directly" send the dispute letter to Experian. Experian's argument on this point is therefore unavailing.[7] Experian's request for summary judgment as to Libbra's claim under 15 U.S.C. § 1681i is denied.

### (5) Willful Violation

A plaintiff can recover statutory or punitive damages by proving a defendant willfully violated the FCRA. 15 U.S.C. § 1681n(a). "A willful violation [of the FCRA] is one committed with actual knowledge or reckless disregard for the FCRA's requirements." *Persinger v. Southwest Credit Sys., L.P.*, 20 F.4th 1184, 1195 (7th Cir. 2021). A CRA "recklessly violates the FCRA when it commits 'a violation under a reasonable reading of the statute's terms,' and its erroneous reading '[runs] a risk of violating the

---

[7] For these reasons, whether Consumer Attorneys was acting as Libbra's legal counsel or as a credit repair organization under 15 U.S.C. § 1679a(3) when it drafted and mailed the dispute letter is immaterial. Furthermore, Experian's response to Libbra — stating it had not taken any action because the letter did not appear to come directly from Libbra — does not, as Experian argues, relieve it of any obligations it may have had. *See* 15 U.S.C § 1681i(a)(1)(A). Courts have found that CRAs can request additional information from consumers to help conduct their reinvestigation, *e.g.*, *Ingram v. Experian Info Sols., Inc.*, 83 F.4th 231, 243 (3d Cir. 2023) ("Under Section 1681i(a)(3)(A), the agency is permitted to request additional information from the consumer, where necessary, before completing its own investigation."); *Sarver v. Experian Info. Sols., Inc.*, 299 F. Supp. 2d 875, 877 (N.D. Ill. 2004), *aff'd sub nom. Sarver*, 390 F.3d 969 (7th Cir. 2004); *Young v. Experian Info. Sols., Inc.*, 776 F. Supp. 3d 721, 742 (N.D. Ill. 2025) (finding Experian was justified in asking for identifying documentation after a consumer disputed information over the phone), but Experian's letter stated it was not going to take *any* action unless Libbra filed another dispute letter. The reasonableness of that procedure is a question for a jury.

law substantially greater than the risk associated with a reading that was merely careless.'" *Id.* (quoting *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69 (2007)) (brackets in original).

In 2018, a jury found that Experian's suspicious mail policies were a "willful" violation of the FCRA. Reviewing the verdict, the Eleventh Circuit said, "a company acts recklessly when its conduct entails an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Younger v. Experian Info. Sols., Inc.*, 817 F. App'x 862, 869 (11th Cir. 2020) (quotation omitted and cleaned up); *see also Safeco*, 551 U.S. at 69 ("[R]ecklessness requires a known or obvious risk that was so great as to make it highly probable that harm would follow." (internal quotation marks omitted)). Applying that rule, the Court overturned that verdict. *Younger*, 817 F. App'x at 869–70. While Experian's screening procedures did misclassify genuine dispute letters, there was insufficient evidence at the time showing Experian screened out genuine dispute letters to the extent necessary for the Court to comfortably say Experian ran an "unjustifiably high risk" of violating its reinvestigation duties that would justify statutory or punitive damages. *Id.* at 869–71 (quoting *Safeco*, 551 U.S. at 68).

Experian has been on notice—since at least 2018—that its "suspicious mail" procedures misclassify genuine dispute letters. Thus, whether Experian has willfully violated the FCRA—disregarding a "known or obvious risk that was so great as to make it highly probable that harm would follow," *Safeco*, 551 U.S. at 69 (internal quotation marks omitted)—presents a genuine dispute of material fact. Although the Eleventh

Circuit found Experian's procedures had foundation in the statutory text, *Younger*, 817 F. App'x at 871, the out-of-circuit case was non-precedential, and the Court made little discussion of Experian's interpretation of "directly" under the FCRA. The facts of *Younger*, moreover, began in 2015. *See Murray v. New Cingular Wireless Servs.*, 523 F.3d 719, 726–27 (7th Cir. 2008) ("It would be reckless *today* to use the same notice, given *Cole* and such assistance as 16 C.F.R. § 642.3 provides, but it was not reckless to act as Cingular did in 2003."). As previously discussed, on the facts here, this Court cannot find as a matter of law that Libbra did not directly send the dispute letter to Experian. If the jury finds Experian violated the FCRA, the Court will not preclude it—at least here—from finding Experian did so willfully.

### (6) Damages

Finally, Experian argues both counts should be dismissed because Libbra did not incur any damages as to the alleged violations of the FCRA. *See Ruffin-Thompkins*, 422 F.3d at 610 ("Because [Plaintiff] also did not demonstrate 'actual damages,' her § 1681i claim fails."). "An FCRA violation may inflict pecuniary harm, like lost income or out-of-pocket expenses caused by denials of credit, housing, or insurance," or "[n]onpecuniary harms, including reputational damage and emotional distress." *Persinger*, 20 F.4th at 1194. Libbra asserts he suffered nonpecuniary harm in the form of emotional distress and reputational harm.

The Seventh Circuit imposes a "high threshold for proof of damages for emotional distress." *Ruffin-Thompkins*, 422 F.3d at 610 (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d

876, 880 (7th Cir. 2001)). In cases "[w]here the plaintiff's own testimony is the only evidence of emotional damages, she must explain her injury in reasonable detail and not rely on conclusory statements, unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006) (internal quotation marks omitted); *see also Ruffin-Thompkins*, 422 F.3d at 610. In *Bagby*, the Seventh Circuit found the plaintiff's allegations that she "'stresses,' gets tension headaches, and clashes with her fiancé over her credit problems" were self-serving conclusory statements concerning her emotional distress that she failed to describe in "reasonable detail." 162 F. App'x at 605. The plaintiff never sought medical or psychological treatment for the emotional distress related to the alleged FCRA violation. *Id.*

Here, the record shows Libbra has anxiety and depression, saw a doctor for his anxiety after Experian's inaccurate reporting, and was prescribed anxiety medication at that visit. (Doc. 92 at ¶¶ 51–52). Libbra paid approximately $300 for his medication and visit. (*Id.* at ¶ 52). Libbra testified that his anxiety and depression were worsened by Experian's inaccurate reporting and argues Experian's actions in part contributed to the visit and his need for a prescription. Given these facts, Libbra need not provide the level of "reasonable detail" required by plaintiffs who solely rely on their own testimony to establish emotional damages. *Bagby*, 162 F. App'x at 605.

Experian argues Libbra suffered no emotional damages because his medical records do not explicitly mention Experian as a source of his anxiety, and he did not know for over a year that Experian had removed the collections tradeline from his credit file. However, Libbra testified that his anxiety has more than one cause, with Experian's actions being one of them. On that note, Experian's arguments may indicate that Libbra's emotional distress from Experian's actions is less significant than he claims, or perhaps nonexistent, but that is a question for a jury to decide. Therefore, taking all reasonable inferences in Libbra's favor, the Court finds a genuine dispute of material facts exists as to whether Libbra suffered damages—including emotional and reputational damages—due to Experian's alleged inaccurate reporting.

## C. Libbra's Motion to Preclude Evidence

Libbra has also filed a Motion to Preclude Untimely Disclosed Materials and Testimony. (Doc. 98). Specifically, Libbra objects to a declaration that was produced one business day after the close of discovery. (*See* Doc. 89-21). The declaration had allegedly already been submitted in a similar case involving the parties' firms and comes from a witness who previously submitted a similar declaration here. (*See* Doc. 89-20). Libbra contends the declaration is used "as support for the Experian MSJ argument that other mail that was sent to Experian using [third-party] mail services was comparable to Plaintiff's dispute letter." (Doc. 98 at 5).

Even assuming disclosure of the evidence at issue fails to comply with Rule 26(a) of the Federal Rules of Civil Procedure, as Libbra asserts, any such failure was "harmless"

and exclusion is not warranted. *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012). District courts consider several factors when deciding whether non-compliance with Rule 26(a) is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.* (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Considering these factors, the Court finds Libbra's argument unpersuasive. Libbra has been minimally prejudiced by this late disclosure, if at all. As previously discussed, the Court rejected Experian's arguments related to these contested disclosures, and the contested evidence did not alter the Court's ruling and reasoning. Also, Experian asserts it disclosed the contested declaration just four days after it was produced to Experian, indicating there was no bad faith or willfulness involved in the late disclosure. There is no jury trial scheduled for the late disclosure to disrupt. Therefore, Libbra's request for preclusion is denied.

## IV.    CONCLUSION

Accordingly, Libbra's Motion for Partial Summary Judgment (Doc. 92), and Motion to Preclude Untimely Discovery (Doc. 98), are DENIED. Experian's Motion for Summary Judgment (Doc. 89) is GRANTED in part and DENIED in part. Experian's procedures relating to the initial inclusion of the collections account on Libbra's credit file did not violate the FCRA. All remaining issues are contingent upon a jury's resolution

of genuine disputes of material facts. Libbra's damages, if any, are to be determined at trial.

ENTER: March 31, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE